### HAGER v. McDONALD et al.

#### (Circuit Court, W. D. Missouri, W. D. January 7, 1895.)

#### No. 1,782.

**1. Joint Debtors—Release of Part—Kansas Statute.**

Under paragraph 1102, Gen. St. Kan. 1889, providing that "any person jointly * * * liable with others for the payment of any debt * * * may be released * * * by the creditor and such release shall not discharge the other debtors beyond the proper proportion of the debt for which the person released was liable," a release of one or more out of several joint judgment debtors, by a compromise agreement, operates as a proportional satisfaction of the judgment, which can thereafter only be enforced against the remaining judgment debtors to the extent of their fractional proportion of the judgment.

**2. Same.**

And although the instrument of release refers also to another statute under which it is made, which statute, separately considered, makes the release operate as a satisfaction pro tanto of the joint judgment, yet this release should not be so restricted, not only because it also refers to the other statute, first above named, but especially because of the fact that the instrument declares on its face that it shall operate as a satisfaction "to the extent of the proportionate share of such judgment."

This was an action by Walter J. Hager, as administrator of Rosa Hager, against Rufus L. McDonald and others, to recover the balance due upon a judgment. Defendants pleaded a release, claimed to operate as a partial satisfaction of the judgment. Plaintiff demurs to the answer.

In the year 1889 plaintiff's intestate recovered judgment in the state district court of Ellis county, Kan., against 16 defendants, sued as joint trespassers, for the sum of $10,734.40 and costs. Afterwards, on the 7th day of February, 1891, said Rosa Hager entered into a compromise agreement with, and executed to, 14 of said judgment defendants, a written release from said judgment, in consideration of the sum of $4,175 then paid to her by the said 14 defendants; which said written release was duly acknowledged by said Rosa Hager, and filed with the clerk of said court. Said release recites, inter alia, that said defendants, being desirous of compromising their part and portion of said judgment, and "paying unto said Rosa Hager their proportionate share of said judgment and costs thereon, and being released therefrom, now, therefore, in pursuance of chapter 75, Gen. St. Kan. 1889, entitled, 'An act to authorize compromises by partners and joint debtors,' and of paragraph 1102, Gen. St. Kan. 1889," the plaintiff released and discharged said 14 defendants from liability to her on said judgment, without prejudice to her right to proceed against the other attaching creditors of said Hager Bros., and other persons jointly liable with them. The written instrument further provided that

it was not intended to be a satisfaction of said judgment, nor to discharge any parties who might be liable under said judgment, and for the conversion of the property, from the effect thereof, except the parties to the compromise. The release then concludes with this provision:

"And it is further understood that the amount hereinbefore acknowledged as received by me is not received by me in satisfaction of said judgment, except to the extent of the proportionate share of said judgment, for which last-named parties are liable."

The act referred to as chapter 75 was enacted in 1866, and makes detailed provisions for composition or compromise by any partner for copartnership debt, to operate as an effectual discharge from any further liability to the partnership creditor, without, however, impairing the right of such creditor to proceed against any other individual member of the firm. The act provides that such release shall be evidenced by a note or memorandum in writing, and making the same evidence by such debtor or debtors; and, where such joint liability shall be evidenced by the record of any court, such release, duly acknowledged, may be filed with the clerk of such court, who shall thereupon discharge said judgment of record, so far as the compromising debtor or debtors are concerned. By section 4 of said act, paragraph 4001 of the General Statutes, it is provided that such compromise "shall in nowise affect the right of the other copartners to call on the individual making such compromise for his ratable portion of such copartnership debts the same as if this law had not been passed." Section 5 of the original act, now paragraph 4002, extends the provisions aforesaid to the case of joint debtors. The provision of paragraph 1102, referred to in the instrument of release, is quoted in the opinion of the court. Since the transaction above stated, said Rosa Hager died intestate in the state of Colorado, and the plaintiff prosecutes this action as administrator. The present action is against a number of other persons than those named in the judgment aforesaid, and seeks to recover against them, as aiders and abettors of the trespass in question, the whole amount of said judgment, after crediting the same with the sum of $4,175 received under said composition and release. These defendants make answer, denying their joint liability in the first count, and by the second count, after pleading the release aforesaid, allege and claim that the same operated as a complete acquittance and discharge of these defendants from any liability. And by the third count it is claimed that said release operated as a satisfaction of said judgment pro rata as to 14 of the 16 judgment defendants, consequently leaving but two-sixteenths, or one-eighth, of said judgment unsatisfied. And as the one-eighth part thereof would be for a sum not exceeding $1,300 or $1,400 in controversy, this court would have no jurisdiction of the subject-matter. To this answer the plaintiff demurs generally as to the second and third counts, on the ground that the facts stated do not constitute any defense.

E. H. Stiles and A. J. Bryant, for plaintiff.

Karnes, Holmes & Kranthoff and Dowe, Johnson & Rusk for defendants.

PHILIPS, District Judge (after stating the facts). As to the issue presented under the second count of the answer, it is not insisted by defendants' counsel that said release operated as a satisfaction of the judgment. The single and decisive question presented by the demurrer to the third count of the answer is whether the composition release operated as a satisfaction of the judgment pro tanto or pro rata. There having been 16 defendants against whom judgment went, and a compromise thereof by 14 of the defendants, if this operated as a pro rata payment, it left only one-eighth part thereof unsatisfied; and, as this fractional part is admitted to be less than the sum necessary to give this court jurisdiction, it would result that the plaintiff's action be dismissed. The party injured by

an act of trespass committed by several persons has a right to proceed against the tort feasors jointly or severally, and he may recover judgments against them all, or any part of them, jointly and severally; but he can have but one satisfaction of either judgment. This is the recognized rule in the state of Kansas. Westbrook v. Mize, 35 Kan. 299–302, 10 Pac. 881. It would logically follow that a satisfaction pro rata of the judgment would operate to discharge all the other cotrespassers to the extent of the proportion released. It may be conceded to plaintiff that under the provisions of chapter 75, Gen. St. Kan., enacted in 1866, the release operated only as a discharge of the other cotrespassers pro tanto. This is clearly enough expressed in said paragraph 4001 of the act. It is insisted, however, in reply to this, that under paragraph 1102, referred to in the composition release, the compromise operates as a satisfaction pro rata of the judgment. This section was first enacted in 1868, and occurs in the General Statutes of 1889, under chapter 21, entitled "An act relating to contracts and promises," and is as follows:

"Any person jointly or severally liable with others for the payment of any debt or demand may be released from such liability by the creditor and such release shall not discharge the other debtors or obligors beyond the proper proportion of the debt or demand for which the person released was liable."

If this latter statute is applicable to this case, it is difficult to escape the conclusion that only one-eighth of said judgment remains unsatisfied; for it, in effect, declares that such release shall discharge the other debtors to the extent, but not "beyond, the proper proportion of the debt or demand for which the person released was liable." The term "proportion" is synonymous with "pro rata." Black, Law Dict. tit. "Pro rata," p. 944. Plaintiff's counsel interposes, as a first objection to this latter statute, that the subject-matter of said paragraph 1102 is not sufficiently expressed in the title of the act, which is, "An act regulating contracts and promises." And the court is asked to hold that the term "contracts and promises" is not comprehensive enough to include judgment debts. In the accepted text books, contracts are divided into three classes: (1) Contracts of record, such as judgments, recognizances, and statutes staple; (2) specialties which are under seal, such as deeds and bonds; (3) simple contracts, or contracts by parol. Judge Brewer, in Meixell v. Kirkpatrick, 29 Kan. 679, expressly held that after judgment against cotrespassers they became "debtors of the plaintiff,—judgment debtors." It is quite inconceivable, upon the idea of equivalents, in character and right, why the legislature should have had in contemplation any distinction in favor of the two classes of contracts—by specialty and by parol—over the one first in order by record, a judgment, in extending the privilege of compromise. Joint debtors by the act of 1866 were put upon the same plane of right with partners, whose obligations unquestionably spring from and are included within contracts. Paragraph 1102 in the latter act being evidently in the spirit of a measure of relief to obligors, it is the duty of courts to so apply it as to effectuate the legislative intent. As the act of 1866 already extended to joint debtors, and as the obligation of a debtor springs from contract and promise, it is not reasonable to say that the

purpose of paragraph 1102 was merely to extend the right of compromise to a class of debtors not already provided for.

The second contention of plaintiff's counsel in this connection is that the supreme court of Kansas has construed this statute to mean that the sum paid by one tort feasor under a judgment in trespass operates in favor of the others only as a satisfaction pro tanto. The case of Meixell v. Kirkpatrick, 29 Kan. 685, is relied on to support this contention. In that case there were separate actions and separate judgments in favor of the plaintiff against two trespassers. It is quite obvious, from the character of the questions raised, that the mind of the learned judge who wrote the opinion was chiefly occupied with the consideration of the fact that the lower court entirely ignored the effect of the compromise made by the defendant under the first judgment, and his thought was directed rather to the proposition that the fact of the settlement made with the other debtor should have been taken into computation in assessing the damages against the remaining trespasser than as to the extent of such satisfaction. It is furthermore apparent that the attention of the learned judge was directed alone to the provisions of chapter 75, or the act of 1866; and it was as to the effect of the release under that chapter that it was said it operated "as satisfaction pro tanto of the claim against the other." There does not appear to have been any adjudication by the supreme court of the state as to the effect of said paragraph 1102 in its relation to this case. It is apparent, however, that in the opinion of the learned counsel, resident in that state, who formulated for the respective parties the compromise agreement, paragraph 1102 applied to and affected the operation of the instrument; for it expressly declares that "in pursuance of chapter 75, Gen. St. Kan. 1889, * * * and of paragraph 1102, Gen. St. Kan. 1889," the said compromise was made and the release executed. And as if to give emphasis to the fact that said paragraph 1102 applied with force and as if expressive of the parties' understanding as to the extent of the satisfaction of the judgment thereby accomplished, the concluding paragraph of the release declares that:

"It is further understood that the amount hereinbefore acknowledged as received by me is not received by me in satisfaction of said judgment except to the extent of the proportionate share of said judgment for which last-named parties are liable."

It would be a strained perversion of the language employed in so carefully framed an instrument, by competent practitioners in law, to hold that "the proportionate share of said judgment" was inadvertently employed, or that they should not be held to have employed it in the sense of its legal acceptation, and with direct reference to said paragraph 1102 named in the agreement, which declares that the release shall operate to discharge "the proper proportion of the debt," which was fourteen-sixteenths of the judgment. It does seem to me that both reason and justice demand that the plaintiff should be held to the operation of said paragraph 1102, and the explicit language of the instrument of release. By incorporating in effect the provisions of said paragraph 1102 into the composition release,

and by the express language of the closing paragraph thereof, the plaintiff agreed and declared that, in consideration of the receipt from the 14 defendants of $4,175, the judgment should be satisfied "to the extent of the proportionate share" for which said debtors were liable. So that, as between the parties to the compromise, the plaintiff received $4,175, not only upon the promise not further to vex the 14 defendants, but on the assurance, in effect, that it should be a pro rata—"proportionate"—satisfaction of the judgment, so that they could not be called upon for further contribution by the other cotrespassers in the event of a recovery against them. The reference to chapter 75 made in the instrument of release was necessary because of the fact that it made the detailed provisions respecting the formula to be gone through as to the execution of the instrument, its acknowledgment, and where it should be filed, and directed the duty of the clerk in entering the formal discharge of record. I am of opinion that the plaintiff should be held in this action to the letter of the law. It therefore results that the demurrer to the third count of the answer is overruled, and the action will be dismissed for want of jurisdiction over the subject-mattter, unless plaintiff makes issue on the facts pleaded in the answer.