No. 34,144

EDITH JACOBSEN, *Appellee,* v. FLOYD WOERNER and
H. W. MCLAUGHLIN, *Appellants.*

(89 P. 2d 24)

Opinion filed
April 8, 1939.

*C. W. Burch, B. I. Litowich, La Rue Royce, L. E. Clevenger, E. S. Hampton*
and *R. E. Haggart,* all of Salina, for the appellants.

*William S. Norris, Wint Smith* and *Homer B. Jenkins,* all of Salina, for the
appellee.

The opinion of the court was delivered by

ALLEN, J.: This was an action for damages for personal injuries
received by a passenger riding in a Cardinal Stage Lines bus which
collided with a gasoline transport truck. The truck was owned by
defendant Floyd Woerner, and was driven by defendant McLaughlin.
Pending the trial Woerner died and plaintiff elected to proceed
against McLaughlin.

On December 30, 1935, plaintiff was a passenger on a Cardinal
Stage Lines bus, which she had boarded at Salina en route for Okla-
homa City. She was seated in the second seat behind the driver on
the left side of the bus. The bus left Salina at about 7:00 o'clock
a. m. About four miles south of Salina on U. S. highway 81, when
the bus was traveling south on its right-hand or west side of the
pavement, it approached a truck which was headed north, and it was
parked on its right-hand or east side of the pavement. Just as the
bus approached the parked truck, an oil transport truck owned by
Floyd Woerner and driven by the defendant McLaughlin, headed
north, approached the rear end of the parked truck and turned to its
left to pass the parked truck, going over to its left-hand side or the

west side of the pavement, and in so doing ran directly into the left side of the bus at about the point where plaintiff was sitting. The bus driver, in an attempt to avoid being struck by the oil transport driven by defendant McLaughlin, drove the bus off the right side of the pavement and was off on the shoulder of the road when the collision occurred.

Plaintiff was severely injured in the collision, and brings this action for damages.

On June 17, 1936, the Cardinal Stage Lines Company paid to plaintiff $250. In consideration of such payment, plaintiff entered into a covenant not to sue the company. That instrument provides:

"WHEREAS, On the 30th day of December, 1935, I, Edith Jacobsen, the undersigned, of full age, was injured in an accident at about four miles south of Salina, Kan., on U. S. highway 81, at about 7:15 a. m. and,

"WHEREAS, The undersigned claims that the said injuries were caused by the negligence of The Cardinal Stage Lines Company and Gayle Norris, their agents, servants, employees, and of other persons and/or corporations and without her fault, and has demanded compensation for said injuries in the sum greater than hereinafter mentioned as paid, and the said The Cardinal Stage Lines Company and Gayle Norris denies that they or any of their agents, servants and employees are guilty of any negligence whatever in the premises, but nevertheless it being the desire of the parties named herein to avoid litigation between them, their agents, servants and employees and the expenses thereof on account of said dispute and forever set at rest the differences so existing between them, but in such a way that such settlement shall not impair or affect the claim of the said Edith Jacobsen against any person or corporation other than the said The Cardinal Stage Lines Company and Gayle Norris, their agents, servants and employees for negligently causing or contributing to cause the said injury;

"Now, THEREFORE, in consideration of the premises and of the sum of two hundred thirty and 50/100 . . . ($230.50) to her in hand paid, the receipt of which is hereby acknowledged, the undersigned hereby covenants and agrees for herself, her executor or executors, administrator or administrators, respectively, to and with the said The Cardinal Stage Lines Company and Gayle Norris, that neither she, they, or any of them will ever sue or bring any action against the said The Cardinal Stage Lines Company or Gayle Norris, their agents, servants and employees on account of injuries and damage occasioned by or growing out of accident above described, and further agrees that these presents may be pleaded as a defense to any action or other proceeding which has already been brought or may be brought or instituted by the undersigned Edith Jacobsen, her heirs, assigns, or representatives."

Two trials were had.

The first trial was held September 21, 1937. The jury returned a verdict in favor of the plaintiff in the sum of $230.50, and returned

answers to special questions. In answer to a special question the jury found the driver of the Cardinal Stage Lines Company was not guilty of any negligence which resulted in the collision between the bus and the gasoline transport of the defendant.

In due time the plaintiff filed a motion to set aside the verdict "and to order a new trial in this case only as to the extent of the plaintiff's injuries, and the amount of damages she is entitled to recover."

The journal entry sustaining the motion is as follows:

"And now on this 6th day of December, 1937, being one of the days of the September, 1937, term of said court this cause comes on for hearing on the motion of the plaintiff for a new trial as to the extent of plaintiff's injuries and amount of damages only, the plaintiff appearing by Norris, Smith & Jenkins, her attorneys, and the defendants appearing by Burch, Litowich & Royce, their attorneys, and the court having duly heard the arguments of counsel of plaintiff and defendants, and being fully advised in the premises finds that the plaintiff's motion for a new trial of this cause as to the extent of the plaintiff's injuries and the amount of the damages only should be and the same is now by the court sustained, and that the general verdict of the jury rendered herein on September 24, 1937, should be and the same is by the court set aside and held for naught as to the amount of said verdict only, and a new trial of said cause is hereby ordered by the court only as to the extent of the plaintiff's injuries and the amount of damages she is entitled to recover, for the reason that, the jury having found and determined the issues in favor of the plaintiff and against the defendants on the question of the negligence of the defendants, and having found and determined that the defendants were guilty of negligence and that the negligence of the defendants was the proximate cause of the collision mentioned in evidence and of the resulting damages and injuries suffered by the plaintiff, and that the negligence of the defendants was within the allegations of plaintiff's petition, by the general verdict returned by the jury and by the answers of the jury to the special questions submitted to them by the court, which answers to the special questions are now approved by the court, the amount of the verdict rendered by the jury in favor of the plaintiff and against said defendants was grossly inadequate to compensate the plaintiff for the injuries and damages suffered by her as shown by the evidence in this case, and that the grossly inadequate verdict returned by the jury in favor of the plaintiff and against the defendants was given by the jury under the influence of passion and prejudice against the plaintiff and was contrary to the evidence.

"It is therefore considered, ordered and adjudged by the court that the general verdict of the jury returned and filed herein on September 24, 1937, pursuant to the trial of this cause as hereinbefore set forth, be and the same is hereby set aside as to the amount of said verdict only, and that the answers returned by the jury to the special questions submitted to them by the court be and the same are hereby approved by the court, and that a new trial of this cause be and the same is now ordered by the court only as to the extent of plaintiff's injuries and the amount of damages which she is entitled to recover from said defendants."

This judgment was entered on December 6, 1937, and no appeal from such judgment was taken by the defendants within the time provided by law. Thereafter, and on February 28, 1938, the case came on for trial again before a jury on the question of the plaintiff's injuries and the amount of her damages only. The jury returned a verdict in favor of the plaintiff in the sum of $5,775.50. At this second trial no special questions were submitted to the jury by either of the parties.

At the first trial the defendant was permitted to introduce in evidence the covenant not to sue between the plaintiff and The Cardinal Stage Lines Company. In the second trial this evidence was excluded.

Two questions are presented—first, did the court err in excluding the evidence as to the covenant not to sue, and, second, did the court err in not reducing the judgment by the amount paid plaintiff by The Cardinal Stage Lines Company under the covenant not to sue.

Did the court commit error in excluding the evidence as to the covenant not to sue?

It is well settled that an injured person can have but one satisfaction for the same wrong. (*Meixell v. Kirkpatrick*, 29 Kan. 679; *Skaer v. Davidson*, 123 Kan. 420, 256 Pac. 155; *Keonn v. Young*, 129 Kan. 563, 283 Pac. 511.)

It is also an established rule that an unconditional release by the party injured of one joint tort-feasor will release all. (*Westbrook v. Mize*, 35 Kan. 299, 10 Pac. 881; *Skaer v. Davidson*, supra; *Rasnic v. City of Wichita*, 126 Kan. 98, 267 Pac. 21; *Paris v. Crittenden*, 142 Kan. 296, 46 P. 2d 633.)

It is equally well established that a covenant not to sue one joint tort-feasor does not release other joint tort-feasors. (*Edens v. Fletcher*, 79 Kan. 139, 98 Pac. 784; *City of Topeka v. Brooks*, 99 Kan. 643, 164 Pac. 285; *Feighley v. Milling Co.*, 100 Kan. 430, 165 Pac. 276; *Scott v. Fair Association*, 102 Kan. 653, 171 Pac. 634.)

As stated, the jury found that the Cardinal Stage Lines Company was not guilty of negligence. It was therefore not a joint tort-feasor. The covenant not to sue cannot be construed as an unconditional release of any joint tort-feasor.

In support of the contention that on the second trial the court erred in excluding the evidence of the covenant not to sue above set forth, the defendant relies upon cases which held that when suit is brought against one joint wrongdoer, the amount received

for the execution of the covenant not to sue another joint wrongdoer is to be credited on any liability which may be found to exist against the one sued. Among the cases cited and relied upon are the following: *Brandstein v. Ironbound Transportation Co.,* 112 N. J. L. 585, 17 A. 580, 104 A. L. R. 926; *O'Neil v. National Oil Co.,* 231 Mass. 20, 120 N. E. 107; *Bogdahn v. Ry. & Power Co.,* 118 Miss. 668, 78 So. 844; *Dwy v. Connecticut Co.,* 89 Conn. 74, 92 A. 883, L. R. A. 1915 E. 800; *Berry v. Pullman Co.,* 249 Fed. 816, L. R. A. 1918 F. 358.

In the last case the court said:

"While we concede that the authorities on this subject are not harmonious, yet we think the weight of authority, at all events the authorities which we are disposed to recognize as sound, treat a covenant not to sue, such as that given in this case, as a mere agreement to release the one joint tort-feasor by whom the settlement is made, and not as a release of the cause of action, leaving the other joint tort-feasors liable to the person injured. It is always understood, and in all these cases it is held, that the joint wrongdoer against whom the suit was brought, when such a settlement with another wrongdoer has been made as pleaded, is entitled, *pro tanto,* to the amount received in settlement by the plaintiff injured as a credit on any liability which may be found to exist against the one sued." (p. 821.)

The contention is that since an injured person can have but one satisfaction for the same wrong, the defendant had the right to have a payment by one of the alleged wrongdoers, in consideration of a covenant not to sue, applied to reduce *pro tanto* the damages sustained by the plaintiff. It is not necessary to question the rule announced in the cases cited in order to determine the controversy at bar. At the first trial on September 1, 1937, every issue between the parties to this action was litigated and determined. No appeal from the judgment was taken by this defendant. On motion of the plaintiff the trial court set aside the verdict and granted a new trial on the question of the plaintiff's injuries and the amount of the damages. As no appeal was taken from this judgment the only issue to be submitted to the jury on the second trial was the extent of plaintiff's injuries, and the amount of damages to which she was entitled. Any evidence as to the covenant not to sue had no bearing on the extent of plaintiff's injuries or the amount of the damages. The amount of the damages having been established by the jury in the second trial, the court could make the deduction of the amount paid to the plaintiff under the covenant not to sue, if the law required such deduction to be made. We hold there was no prejudicial erorr in excluding the evidence as to the payment made to

the plaintiff by the Cardinal Stage Lines Company under the covenant not to sue above set forth.

Did the court err in not reducing the judgment by the amount paid the plaintiff by the Cardinal Stage Lines Company under the covenant not to sue? We think it did.

In *Abbott v. City of Senath*, (Mo.) 243 S. W. 641, the court said:

"It is a just and well-established doctrine that there shall be but one satisfaction accorded for the same wrong. If one be injured by a tortious act, he is entitled to compensation for the injuries suffered, and, if several persons are guilty in common of the tort, the injured one has his right of action for damages against each and all of the joint tort-feasors, and may at his election sue them individually or together. But if he receive full satisfaction from one of them, his right of action against the other is thereby extinguished. (*Dulaney v. Buffum*, 173 Mo. 1, 73 S. W. 125; *Butler v. Ashworth*, 110 Cal. 614, 618, 43 Pac. 4, 386.)

" 'In such a case it is not necessary that it should appear that the party making the settlement was in fact liable. It will be deemed sufficient if there is an appearance of liability; that is, something in the nature of a claim on the one hand, and a possible liability under the rules of law on the other.' (*Cleveland, etc., R. R. Co. v. Hilligoss*, 171 Ind. 417, 425, 86 N. E. 485, 488, 131 Am. St. Rep. 258.

"If the injured person 'accepted satisfaction in full for the injury done him from whatever source it may come, he is so far affected in equity and good conscience that the law will not permit him to recover again for the same damages.' (*Lovejoy v. Murray*, 3 Wall. 1, 17, 18 L. Ed. 129.)

"Plaintiff's intestate having made a claim against the Senter Commission Company for injuries received from the falling awning, and having received payment in satisfaction of such claim, she is estopped to now assert that there was in fact no liability on the part of the company, and that it was not a joint tort-feasor. (*Hubbard v. Railroad*, 173 Mo. 249, 255, 256, 72 S. W. 1073.)" (p. 642.)

When a right of action is once satisfied it ceases to exist. If part satisfaction has already been obtained, further recovery can only be had of a sum sufficient to accomplish satisfaction. It is not necessary that the party making payment in partial satisfaction was in fact liable. Anything received on account of the injury inures to the benefit of all and operates as a payment *pro tanto*. The plaintiff is entitled to only one satisfaction from whatever source it may come.

The cause is remanded to the trial court with directions to deduct from the judgment the amount of payment made to plaintiff by The Cardinal Stage Lines Company under the covenant not to sue, and to render final judgment for plaintiff for the balance.